489 P.2d 1191 .

STATE of Utah, Plaintiff and Respondent,

v.

Terry Shannon ADAMS, Defendant and Appellant.

No. 12523.

Supreme Court of Utah.

Oct. 19, 1971.

J. Anthony Eyre, of Kipp & Christian, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Asst. Atty. Gen., Salt Lake City, for respondent.

CROCKETT, Justice:

Terry S. Adams appeals from a conviction of assault with a deadly weapon for firing a rifle at an Ogden City police officer who responded to a call to the defendant's home at 2352 Orchard Avenue on the night of November 7, 1970. He was sentenced to a term of not less than five years in the Utah State Prison.

In attacking his conviction, defendant contends: (1) that the evidence was not sufficient to prove beyond a reasonable doubt that he intended to shoot at the officer; (2) that he was improperly cross-examined about his prior criminal conduct; (3) that even if the conviction be sustained, the sentence imposed upon him was not according to law.

At about 11:00 p. m. on November 7, 1970, defendant Adams phoned the Ogden City police to report a claimed attempt at burglarizing his home. When police knocked at his front door, he shouted profanities, obscenities and threats at them. Having some prior knowledge of his propensities, they tried to mollify him, and then left. About an hour later he again called to report a claimed burglary attempt and stated, inter alia, that he wanted to shoot one of them. Nevertheless, the officers again went to the residence to investigate. As

Officer Laurence Miller approached, he could see the defendant in the living room through a picture window. When he called the defendant's name, the latter turned off the light, and then fired a shot through the window in the direction of the officer. The officers used tear gas to rout the defendant from his residence and subdue him.

## INSUFFICIENCY OF EVIDENCE

As to (1) above: In urging that the evidence does not show that he intended to shoot the officer, and consequently insufficient to sustain the conviction, defendant says that before firing the shot he looked out of the window and saw no one. The fallacy in his position is his insistence upon treating the evidence in accord with his own story, whereas, it may well have impressed the jury as a post-mortem self-justifying explanation of activities which occurred in a siege of anger and violence. Other aspects of the evidence which tend to harmonize with the verdict of the jury include the testimony of Officer Earl J. Carroll that when in the company of other officers he went to defendant's home in response to the first call:

I walked up to the house and attempted to talk to Mr. Adams [defendant].

I called Adams by his first name [Terry].

He asked me my name. I told him Officer Carroll. The first thing that came out of his mouth was "Officer Pig Carroll, I am going to kill you. Are you ready to die?"

This ties into the evidence that when Officer Miller came to the home and called the defendant by name, the latter turned off the light and fired a shot out of the window. Both Officers Miller and Joseph Liu say they heard the bullet pass over their heads. It was the exclusive prerogative of the jury to analyze all aspects of the evidence and to draw whatever reasonable inferences they thought could fairly be deduced therefrom.[1] Viewed in that light, there seems to be no doubt but that they were justified from the circumstances shown in believing beyond a reasonable doubt that the defendant was guilty of the assault with a deadly weapon upon Officer Miller.

## THE CROSS-EXAMINATION

As to (2) above: Defendant does not contend otherwise than that he may properly be questioned concerning prior felony convictions.[2] But his contention is that the examination went beyond that into activities which could serve only to degrade him and besmirch his character in the eyes of the jury; and cites cases in which this court has censured the cross-examination

1. State v. Knepper, 18 Utah 2d 215, 418 P.2d 780.

2. Sec. 78-24-9, U.C.A.1953; State v. Hansen, 22 Utah 2d 63, 448 P.2d 720.

of a defendant where that would be the effect.[3]

There is no doubt but that defendant was questioned about some matters pertaining to his misconduct about which he ordinarily should not be subjected to inquiry. These include:

Q. You have listed the things that you were convicted of. Of the things that you listed how many have you left out?

A. I don't know. Oh, I have plead guilty to a negligent homicide charge in which my wife was killed.

Q. And you were driving at the time she was killed; were you not?

A. Yes, I was.

Q. What else have you left out besides the negligent homicide?

A. I don't know. I just don't know. I don't keep track of them.

\*   \*   \*   \*   \*   \*

Q. Now, you have been involved in numerous fights; haven't you?

A. Yes, I have.

Q. You have been involved in numerous assaults and batteries to which you have never been booked or charged; is that true?

A. When I was a teenager.

Q. Since the time you have been an adult you have been involved in numerous fights that you have not been booked or charged on; isn't that true?

A. Not to my knowledge.

\*   \*   \*   \*   \*   \*

Q. What about the Moose Lodge?

A. No. I have not.

Q. \* \* \* three of you were involved?

A. I was there.

Q. And how badly was that place shot up?

A. That wasn't my doing.

Q. How badly was that place shot up?

A. I have no idea. I know there were some shots fired in there.

\*   \*   \*   \*   \*   \*

Q. On what other matters, on what other assaults and batteries or the use of guns?

A. I was charged with assault with a deadly weapon in '69. I pleaded guilty to aggravated assault on that charge. And in 1969 I pleaded guilty to assault with a deadly weapon.

\*   \*   \*   \*   \*   \*

▮ Though the defendant has a right not to give evidence against himself and thus not to testify in his trial, if he elects

---

**3.** State v. Dickson, 12 Utah 2d 8, 361 P.2d 412; State v. Edwards, 13 Utah 2d 51, 368 P.2d 464; State v. Peterson, 23 Utah 2d 58, 457 P.2d 532.

to waive that right and offer himself as a witness, he subjects himself to cross-examination the same as any other witness.[4] Determination of his charge of improper cross-examination requires considering it in the light of his testimony on direct examination. In it his own counsel sought to show that the defendant was a man of good nature and good character; and that the police had unjustifiably harassed and annoyed him. In doing so he brought out various matters in which the defendant had been accused of crime. The defendant himself having thus opened up the subject, it was quite proper for the State to question him on matters which might tend to challenge, contradict or explain his assertions on direct examination.[5] The cross-examination complained of was of that character, and was thus permissible. In addition to the foregoing, it is further to be noted that this entire testimony was elicited without any objection from the defense, and it is therefore not properly the subject of claim of error on appeal.[6]

---

4. Sec. 77–44–5, U.C.A.1953; State v. Hensen, footnote 2 above.

5. See State v. Frayer, 17 Utah 2d 288, 409 P.2d 968, cert. den. 385 U.S. 936, 87 S.Ct. 297, 17 L.Ed.2d 216.

6. State v. Winger, 26 Utah 2d 118, 485 P.2d 1398.

7. In view of our indeterminate sentence law, Sec. 77–35–20, U.C.A.1953, under

## THE IMPROPER SENTENCE

As to (3): The defendant's attack upon the sentence imposed upon him of "imprisonment in the Utah State Prison for a term of not less than five years," is that it is not in conformity with Sec. 76–7–6, which prescribes the penalty for assault with a deadly weapon as "imprisonment in the [Utah] state prison not exceeding five years." That a term of "not less than five years" and thus presumably for at least five years, is something greater, and therefore not the same as, a term of "not exceeding five years" which of course may be for less than five years, is so obvious as not to require more than stating the proposition.[7] It is therefore necessary that this case be remanded for the imposition of a correct sentence consistent with the language of the statute; and that he have credit for any time he has already served under the prior sentence.[8]

CALLISTER, C. J., and HENRIOD, TUCKETT, and ELLETT, JJ., concur.

---

which the Board of Pardons may determine the time actually to be served, the difference in the sentence imposed may not be of critical importance. See State v. Walsh, 106 Utah 22, 144 P.2d 757. However, the defendant is entitled to have the correct sentence imposed.

8. That when sentence is improper, remand may be for imposition of correct sentence, Folck v. Watson, 102 Utah 470, 132 P.2d 130.