The STATE of Utah, Plaintiff and Respondent,

v.

Joseph B. MORA, aka Wesley John Harmon, Defendant and Appellant.

No. 14071.

Supreme Court of Utah.

Jan. 13, 1977.

Jack W. Kunkler, of Salt Lake County Legal Defender's Office, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff-respondent.

CROCKETT, Justice:

Joseph Mora appeals from a conviction of aggravated assault [1] upon James Ingle in the latter's home at 5090 Emigration Canyon, Salt Lake City, Utah, on the night of November 16, 1974.

Defendant contends that the trial court erred by (1) allowing the prosecution to question him about prior offenses; (2) denying his motion to suppress evidence of his prior felony convictions; and (3) not instructing the jury on the included offense of simple assault.

On that night, around 6:30 p. m. defendant was told by one Leslie Appling, that his girlfriend, Cindy Proctor, was at the Ingle home. He went there about 7:00 p. m., and knocked at the door. Mr. Ingle answered it. Defendant demanded to know where Cindy Proctor was. When Mr. Ingle refused to answer, the defendant exhibited a

1. Sec. 76–5–103, U.C.A.1953.

pistol, struck Ingle in the head with his hand, cocked the pistol and put it to Mr. Ingle's head and demanded answers.[2] Yielding to the threats, Mr. Ingle gave answers, writing some of them down. Ingle said that when this was finished the defendant put the cocked gun to Ingle's lips, warned him not to call the police, pocketed the pistol and left.

As to (1) above: Defendant recognizes that he may properly be questioned concerning prior felony convictions.[3] However, he contends that the prosecutor went beyond permissible bounds in questioning him about offenses for which he had not been convicted; and this only for the purpose of degrading him with the jury.[4]

█ When a defendant offers himself as a witness, he may properly be subjected to the tests of credibility, by questioning him in the same manner and to the same extent as any other witness,[5] as to any matter which would tend to contradict, weaken, or modify the effect of his direct examination.[6] As in so many situations of controversy, the solution is not to be found in abstract rules, but in looking at the total circumstances and applying them thereto. In this instance, the defendant's counsel, in apprehension that testimony concerning the defendant's convictions would be brought out, elected to attempt to minimize its effect, and reap whatever advantage might be found therein, by bringing it out himself in such a manner as to show that the defendant was not disposed to violence or the use of deadly weapons.

█ The aspects of the evidence relevant to defendant's contention are:

### Redirect Examination

By Mr. Kunkler (defendant's attorney)

Q. Mr. Mora, . . . Have you ever been convicted of a felony?
A. Yes, I have.
Q. Can you tell me the date and the felony?
A. . . . '59 for burglary, and 1963 for robbery.
Q. Did either involve the use of a weapon?
A. No.

The prosecutor asked a series of questions about these two prior felony convictions, then the following ensued:

Q. Isn't true you have offered violence to other persons prior to November 16th?
A. No, I haven't.
Q. Isn't it true that you have offered violence or offered to kill Rick Hausgo?
A. No, I have not.

    *    *    *    *    *    *

Q. You are denying, then, you threatened him and caused him to move out of town?
A. Yes, I am.
Q. Are you denying violence to Leslie Appling on November 20th?
A. No, I am not.
Q. You are admitting violence to her?
A. Yes, I admit violence to her.

Inasmuch as the defendant had chosen to elicit evidence to show that he was not a man of violence, that matter became a legitimate subject of inquiry and refutation.[7] Wherefore, the questions asked by the prosecutor seem reasonably calculated to bring out facts which might tend to contradict or weaken the effect of the defendant's assertion.[8] It is true that in such matters the inquiries should be restricted within reason-

2. *State v. Wilcox*, 28 Utah 2d 71, 498 P.2d 357.

3. See Sec. 78–24–9, U.C.A.1953; *State v. Bennett,* 30 Utah 2d 343, 517 P.2d 1029; *State v. Simmons,* 28 Utah 2d 301, 501 P.2d 1206.

4. Citing *State v. Edwards,* 13 Utah 2d 51, 368 P.2d 464; *State v. Peterson,* 23 Utah 2d 58, 457 P.2d 532.

5. Sec. 77–44–5, U.C.A.1953; *State v. Adams,* 26 Utah 2d 377, 489 P.2d 1191; *State v. Hansen,* 22 Utah 2d 63, 448 P.2d 720.

6. *State v. Hansen,* footnote 5 above, 2 Wharton's Crim.Evid. (13th ed.) 376, Sec. 446.

7. See Rules 46 and 47, Utah Rules of Evidence.

8. *State v. Hansen,* footnote 6 above.

able limits, as determined by the sound discretion of the trial court. Under the circumstances shown, and particularly in view of the answers given, we do not see that the cross-examination which was allowed so transgressed propriety as to constitute error prejudicial to the defendant.

 In connection with the foregoing, the following should be observed: Prior to the colloquy above quoted from the record, but after the defendant had taken the stand and given his version of what had happened upon direct examination, his counsel moved the court to suppress any questions about his prior felony convictions on the ground that the records did not reflect that he voluntarily and understandingly entered his pleas of guilty in those cases. It was shown and defendant acknowledged that he was represented by counsel in those cases. Our view is in accord with that taken by the trial court: that in the absence of any indication to the contrary, we presume that the judgments of our courts are valid.[9] This, in addition to the fact that the defendant himself made the choice to raise the issue before the jury, who on the basis of that and the whole evidence, did not believe that there was any reasonable doubt of his guilt, leads us to the conclusion that there was no error and that he was accorded his entitlement of a fair trial.[10]

On the issue raised as to the failure to submit to the jury the lesser and included offense of simple assault, the following is pertinent:

> Defendant's attorney stated to the court:
> Your Honor, it has been my advice to my client to move the Court to put in an instruction concerning the lesser, included offense of simple assault, and *my client does not wish to do that.* It would be my recommendation to put one in, but *he does not want to.* [Emphasis added.]

It is undoubtedly within the prerogative of the trial court to submit included offenses if he thinks that the interest of justice so require.[11] But when the defendant indicates that he does not want that done, the trial court is under no duty to disregard his request. If the defendant chooses as a matter of trial strategy to have his case submitted on the "all or nothing" gambit, when he loses, he should not be permitted to do an about face and claim that the trial court committed error in going along with his request, but should have submitted the included offense anyway.[12]

Affirmed. No costs awarded.

HENRIOD, C. J., and ELLETT, MAUGHAN and WILKINS, JJ., concur.

---

9. *State v. Valdez,* 19 Utah 2d 426, 432 P.2d 53; *State v. Seymour,* 18 Utah 2d 153, 417 P.2d 655. We so state in awareness of defendant's arguments, citing *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374, and *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.

10. *State v. Canfield,* 18 Utah 2d 292, 422 P.2d 196.

11. *State v. Mitchell,* 3 Utah 2d 70, 278 P.2d 618; *State v. Valdez,* footnote 8 above, *State v. Close,* 28 Utah 2d 144, 499 P.2d 287.

12. Ibid; and see *State v. Gellatly,* 22 Utah 2d 149, 449 P.2d 993.