**STATE**

v.

**Andy REMY.**

No. 2005–249–C.A.

Supreme Court of Rhode Island.

Nov. 30, 2006.

Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

**OPINION**

Justice ROBINSON for the Court.

On April 12, 2005, a jury found the defendant, Andy Remy, guilty of assault with a dangerous weapon in connection with an incident that occurred on March 6, 2004. Thereafter, on June 24, 2005, the defendant received a sentence of fifteen years imprisonment, with two years to serve and thirteen years suspended, with probation.

The defendant has appealed to this Court, contending (1) that the trial justice abused his discretion in ruling that the prosecution would be permitted to present evidence of defendant's two prior misdemeanor convictions in order to impeach him if he chose to testify at trial and (2) that the trial justice erred in overruling defense counsel's objection to a comment that the prosecutor made during closing argument which implied that a defense witness had lied during her testimony.

This case came before this Court on October 10, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. Having considered the record, the briefs filed by the parties, and the oral arguments, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument. For the reasons set forth herein, we deny the appeal and affirm the judgment of the Superior Court.

**Facts and Travel**

The defendant was charged with assault with a dangerous weapon. A jury trial began on April 7, 2005 and ended with a guilty verdict on April 12, 2005. We set forth below the most significant testimony that several witnesses gave during the four-day trial.

The complainant, Pierre Charles, testified to the following through an interpreter. In February or March of 2003, Mr. Charles began renting a third-floor room in a house located at 40 Felix Street in Providence. He paid defendant, who was

the owner of the house, a rent payment of $240 monthly.

Mr. Charles testified that he and defendant maintained a "good" relationship until February 13, 2004. On that night, Mr. Charles refused to rent a car for defendant, even though he had previously agreed to do so. According to Mr. Charles, starting that night in February and continuing until March 6, 2004, defendant repeatedly threatened him, going so far as to say, "I'm going to beat you one day." As a result of this verbal abuse, Mr. Charles informed defendant of his plans to move out of the room at 40 Felix Street. As of March 6, 2004, however, Mr. Charles had not moved out because he had not yet found a suitable apartment to which to move.

Mr. Charles further testified that on the evening of March 6, 2004, while washing laundry on Smith Street in Providence, he received two phone calls from defendant inquiring as to where he was and when he would be finished. As Mr. Charles arrived back at 40 Felix Street, defendant, accompanied by Terry Green (a person who lived on Mr. Charles's floor) and Sheena Rodrigues (a female friend of defendant), pulled his car in front of Mr. Charles's car and blocked it. Mr. Charles further testified that when he rolled down his car window, defendant punched him in the mouth. As defendant continued to beat him, Mr. Charles grabbed defendant by the arm and bit his shoulder, causing defendant to back away.

Mr. Charles testified that he then left his car to call the police. When Mr. Charles finished speaking on the phone, defendant told him, "I'm going to kill you." According to Mr. Charles, the defendant then proceeded to hit him on the head with a "metal bar," causing a wound that required approximately six staples to repair. Mr. Charles remembered asking defendant to transport him to the hospital because he did not feel able to drive himself. Mr. Charles testified that, rather than acceding to that request, defendant sought to leave the scene of the confrontation.

Detective Robert Melaragno [1] of the Providence Police Department testified that as he arrived at 40 Felix Street on the evening of March 6, 2004, he observed a vehicle traveling slowly down Felix Street and a man running alongside the vehicle. Detective Melaragno noticed that the man running alongside the vehicle, whom he later identified as Mr. Charles, was bleeding from his head and seemed dazed. Detective Melaragno also stated that defendant, who "seemed agitated," explained to the detective that he had hit the other man "in the head with a jack" during an argument. Detective Melaragno clarified that the "jack" to which defendant had alluded was, in fact, a tire iron. The detective did not observe any injuries sustained by defendant.

Officer Vincent Pazzetta of the Providence Police Department also responded to 40 Felix Street after being notified of a call concerning a disturbance at that location. Officer Pazzetta observed that Mr. Charles was "bleeding quite profusely from the head area," so he called an ambulance. Officer Pazzetta did not notice any injuries on defendant's person while at the scene, despite coming within a few feet of him. Later, however, the officer did notice "a bite mark on [defendant's] right shoulder" when defendant was in a cell block at the police station.

---

1. There is a discrepancy in the record as to the spelling of Detective Melaragno's name. Throughout this opinion, we will use the spelling that appears on his witness statement.

Sheena Rodrigues, one of the passengers in defendant's car, testified that on the night of March 6, 2004, defendant parked his car two or three car lengths behind Mr. Charles's car. She stated that Mr. Charles was already stepping out of his car as defendant was arriving in his car. Ms. Rodrigues testified that Mr. Charles threatened and pushed defendant and that a fight resulted. She further testified that Mr. Charles bit defendant before Mr. Green (the other occupant of defendant's car) was able to break up the fight. She added that defendant then walked away, stepped into his car, and started to drive away.

According to Ms. Rodrigues, as defendant was driving down the road, Mr. Charles was attempting to pull him out of the car. Ms. Rodrigues testified that defendant then emerged from the car and struck Mr. Charles, but she denied seeing defendant in possession of a crow bar or tire iron. She further testified that after striking Mr. Charles, defendant started to drive away and Mr. Charles again attempted to remove him from the car. On cross-examination, Ms. Rodrigues admitted that before coming to testify, she had discussed the March 6, 2004 incident with defendant and with his lawyer and an investigator from the lawyer's office; she also acknowledged that she had on multiple occasions accompanied defendant to court concerning this incident.

During the trial, the prosecution advised the court that if defendant himself should choose to testify, the prosecution would attempt to impeach him by presenting evidence of two of his prior assault convictions. Although defendant argued against the introduction of those prior convictions into evidence for purposes of impeachment, the trial justice ruled them admissible under Rule 609 of the Rhode Island Rules of Evidence. The defendant decided not to testify.

At the conclusion of the trial, the jury convicted defendant of assault with a dangerous weapon. The defendant then filed a motion for a new trial, which was denied on April 26, 2005. The defendant received a sentence of fifteen years imprisonment, with two years to serve and thirteen years suspended, with probation.

On appeal, defendant contends (1) that the trial justice abused his discretion in ruling that the prosecution would be permitted to present evidence of defendant's two prior misdemeanor convictions in order to impeach him if he chose to testify at trial and (2) that the trial justice erred in overruling defense counsel's objection to a comment that the prosecutor made during closing argument that implied that a defense witness had lied during her testimony.

## Analysis

### I

### Admissibility of Convictions to Impeach Defendant Under Rule 609

■ The defendant's first contention on appeal is that the trial justice abused his discretion in ruling that the prosecution would be permitted, for purposes of impeachment, to present evidence of defendant's prior convictions for simple assault and for misdemeanor domestic assault if he opted to testify at trial. We are not persuaded by this contention.

■ The trial justice is vested with a considerable degree of discretion in deciding whether or not to admit evidence of prior convictions to impeach a witness. *State v. Silvia*, 898 A.2d 707, 718 (R.I.2006) ("It is well settled in this jurisdiction that the trial justice has broad discretion in deciding whether or not to admit evidence

of prior convictions under Rule 609."). It logically follows that this Court will not overturn such a decision on appeal unless there has been an abuse of that discretion. *Id.* ("We will not disturb a trial justice's ruling in this regard absent an abuse of discretion."); *State v. Rocha,* 834 A.2d 1263, 1266 (R.I.2003) ("This Court uses an abuse of discretion standard when reviewing a trial justice's ruling on the admissibility of evidence of previous bad acts, convictions, or character."); *State v. Werner,* 831 A.2d 183, 204 (R.I.2003) ("There is no question that the standard used by this Court in reviewing a trial justice's ruling to admit or exclude [evidence of a witness's prior convictions] is one of abuse of discretion.* * * The standard of abuse of discretion is one that gives extreme deference to the trial justice's determination.").

Rule 609 of the Rhode Island Rules of Evidence permits the admission of evidence of the prior convictions of a witness in order to attack that witness's credibility unless the court determines that the prejudicial effect of the conviction substantially outweighs its probative value. Rule 609 states in pertinent part:

"(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record.

"(b) *Discretion.* Evidence of a conviction under this rule is not admissible if the court determines that its prejudicial effect substantially outweighs the probative value of the conviction. If * * * the conviction is for a misdemeanor not involving dishonesty or false statement, the proponent of such evidence shall make an offer of proof * * * so that the adverse party shall have a fair opportunity to contest the use of such evidence."

In this case, it is clear to us that the trial justice engaged in the appropriate Rule 609 balancing process when deciding whether or not to allow the introduction of defendant's prior convictions into evidence for the purpose of impeaching him if he chose to testify. The defendant had previously been convicted of simple assault in April of 2000 and of misdemeanor domestic assault in December of 2002; each of these convictions resulted in a suspended sentence of imprisonment for one year and probation for one year. The trial justice noted that credibility was an issue in this case and that these convictions were of the type "for which credibility should be taken into consideration." He also emphasized the proximity in time between the two convictions and the March 6, 2004 incident concerning which defendant was on trial. The trial justice accordingly concluded that said convictions would be of significant probative value to the jury. After considering the possible prejudice to defendant, the trial justice concluded that the convictions would be admissible because their probative value outweighed their potential prejudice to defendant. We perceive no basis in the record for concluding that the trial justice abused his discretion in making this determination.

The defendant argues that the trial justice erred in evaluating the remoteness *vel non* of the convictions when he focused on the time elapsed between the previous convictions and the commission of the crimes allegedly committed by defendant *rather than* on the time elapsed between the previous convictions and the trial. It is our view that the appropriate time period to use in evaluating the remoteness of a previous conviction when determining whether or not to permit it to be used for impeachment purposes is the time between the date of the previous conviction and the date of the present trial.

However, given the broad discretion accorded a trial justice in deciding whether or not a previous conviction is too remote to be admissible for impeachment purposes, *see, e.g., State v. Walsh,* 731 A.2d 696, 699 (R.I.1999), this Court sees no abuse of discretion in the trial justice's ruling on the remoteness issue in this case, even though he used a standard of measurement other than the standard which we consider to be preferable.[2]

The defendant also argues that the trial justice erred in admitting defendant's two prior convictions because they are misdemeanors that do not involve dishonesty or false statement. For this reason, in defendant's view, these convictions do not have any bearing on the likelihood that defendant would testify falsely at trial.

Unlike the roughly parallel Federal Rule of Evidence,[3] Rhode Island's Rule 609 quite plainly does not require that a prior conviction involve dishonesty or false statement or be a felony for it to be potentially admissible for impeachment purposes. *See State v. Medina,* 747 A.2d 448, 450 (R.I.2000) ("Rule 609 provides that the prior conviction need not involve dishonesty, false statement, or a felony to be admissible."); *State v. Pailin,* 576 A.2d 1384, 1388 (R.I.1990) ("Rule 609 does not distinguish between felony convictions and misdemeanor convictions for purposes of admissibility for impeachment."). The rationale behind the fact that Rhode Island Rule 609 makes *all* prior convictions (as distinguished from the more limited types of convictions under Federal Rule 609) available for the purpose of impeaching a witness is that the jury should be able to consider whether or not a person who has previously broken the law may have such disrespect for the law as to render him or her unwilling to abide by the oath requiring truthfulness while testifying. *See State v. Mattatall,* 603 A.2d 1098, 1117–18 (R.I.1992).[4]

Although Rule 609(b) imposes certain additional procedural hurdles that must be cleared before prior misdemeanor convictions not involving dishonesty or false statement may be used for impeachment

2. We are also mindful that the passage of time is not the only factor to be considered in this context. *See State v. Mattatall,* 603 A.2d 1098, 1117 (R.I.1992). As we have previously held, the trial justice must consider "the remoteness of the conviction, the nature of the crime, and the defendant's disdain for the law as represented by the extent of his prior criminal record * * *." *Id.* The trial justice in this case did just that, and we perceive no abuse of discretion in the manner in which he carried out that process or in the conclusion that he reached.

3. Rule 609 of the Federal Rules of Evidence states in pertinent part:
   "(a) **General Rule.** For the purpose of attacking the credibility of a witness,
   "(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and

evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
   "(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."

4. We reiterate what we said in *Mattatall:*
   "It has long been recognized that there is a 'basis in reason and experience why one may place more credence in the testimony of one who has lived within the rules of society and the discipline of the law than in that of one who has so demonstrated antisocial tendency as to be involved in and convicted of serious crime.'" *Mattatall,* 603 A.2d at 1117 (*quoting State v. Sands,* 76 N.J. 127, 386 A.2d 378, 386 (1978) and *State v. Harless,* 23 Utah 2d 128, 459 P.2d 210, 211 (1969)).

purposes, it does not entirely prohibit their admissibility. *Pailin*, 576 A.2d at 1388 ("We do not believe, however, that Rule 609(b) establishes a rebuttable presumption that would preclude the use of misdemeanors that do not involve dishonesty or false statements for impeachment."). Accordingly, the fact that defendant's previous convictions were both misdemeanors that did not involve dishonesty or false statement only ensured defendant the opportunity to contest their introduction; it did not automatically prohibit their introduction. *See id.* The defendant does not contend that he was not given a fair opportunity to oppose the introduction of the prior convictions, and we do not perceive any abuse of discretion by the trial justice in this regard. Accordingly, defendant's argument in this regard is unavailing.

The defendant next contends that the trial justice erred in determining that the two previous convictions were admissible when, according to defendant, the trial justice failed to consider their prejudicial effect—especially in view of defendant's contention that the previous convictions and the crime for which he was being tried were "exceedingly similar." To the contrary, the trial justice specifically stated on the record that he had considered the potential prejudicial impact which the admission of this evidence might have on defendant, and he determined that the probative value of the evidence outweighed this potential prejudice. We have previously upheld the use of prior convictions for impeachment purposes even when the convictions were similar or identical to the crime for which that defendant stood trial. *See State v. Rodriquez*, 731 A.2d 726, 731–32 (R.I.1999) (affirming trial justice's decision to allow the defendant's prior convictions for "breaking and entering of a home with a knife with the intent to commit armed-robbery, assault with the intent to rob," and "assault with a deadly weapon" to impeach the credibility of the defendant, who was on trial for robbery); *State v. Taylor*, 581 A.2d 1037, 1039–40 (R.I. 1990) (affirming trial justice's decision to allow the defendant's prior conviction for breaking and entering in the daytime to impeach the credibility of the defendant, who was on trial for robbery); *State v. Maxie*, 554 A.2d 1028, 1029, 1031–32 (R.I. 1989) (affirming trial justice's decision to allow the defendant's prior convictions for attempted larceny and robbery to impeach the credibility of the defendant, who was on trial for robbery). The prior convictions at issue in this case (for simple assault and misdemeanor domestic assault) were certainly not more "exceedingly similar" to the crime for which defendant was on trial than were the prior convictions in the cases cited above. The defendant's argument as to this point is unconvincing.[5]

In connection with his argument about the prejudicial impact that the admission of the prior convictions would present, defendant argues extensively that limiting instructions (to the effect that the prior convictions be used only to assess defendant's credibility) would have been ineffective in alleviating the prejudice. In this instance, however, since defendant chose

**5.** The defendant also faults the trial justice's reliance on *State v. Pailin*, 576 A.2d 1384 (R.I.1990). The defendant argues that the trial justice erred in relying on *Pailin* because the prior convictions that were admitted for impeachment in that case were dissimilar from the crime for which that defendant was being tried, whereas the prior convictions in the instant case are, in defendant's words, "exceedingly similar" to the crime for which defendant was on trial. However, the trial justice's reliance on *Pailin* in this case was restricted to an examination of the guidelines directing the justice's determination of admissibility; he in no way relied on the specific facts of that case to support his view that this defendant's previous convictions were admissible. Accordingly, this argument also fails.

not to testify, there is no limiting instruction for us to review. Therefore, we consider this argument to be hypothetical and we shall not address it.[6]

## II

### Prosecutor's Statement During Closing Argument

■ The defendant's second contention is that the trial justice erred in overruling defense counsel's objection to a comment made during the prosecutor's closing argument. Defense counsel argued that the comment in question was prejudicial because it implied that a defense witness had lied during her testimony at trial. We do not reach the merits of this argument because defendant failed to properly preserve the issue for appellate review.

■ A defendant is required to make a request for cautionary instructions or move for a mistrial in order to preserve for review by this Court a question concerning alleged prejudicial error in a closing argument; a mere objection is insufficient. *State v. Horton*, 871 A.2d 959, 964 (R.I. 2005). A defendant need not request a cautionary instruction or move for a mistrial to preserve such an issue for appeal, however, if the request for cautionary instructions would have been futile or the attempt to cure the prejudice would have been ineffective. *Id.* Similarly, an exception to the rule that a mere objection is insufficient exists when a constitutional right is implicated and each of the following three criteria is satisfied: (a) the alleged error consists of more than harmless error; (b) the record permits a determination of the issue; and (c) counsel's failure to raise the issue at trial stemmed from ignorance of a novel rule of law about which he or she could not reasonably have known at the time of trial. *Id.* at 964–65.

In this case, the prosecuting attorney, referring to defense witness Sheena Rodrigues, remarked during the closing argument: "[O]bviously she's going to talk to the Defendant about it to get her story straight." Defense counsel objected to this remark, and the court overruled the objection. But defense counsel neither requested a cautionary instruction nor moved for a mistrial, and there is no indication in the record that any of the instances alluded to in *Horton* in which compliance with the rule is not required would be applicable in this case. Accordingly, the defendant has not properly preserved this issue for appeal, and therefore we will not reach the merits of this argument.

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.

---

**6.** Having disposed of this issue regarding Rule 609 of the Rhode Island Rules of Evidence on the merits, we choose not to decide whether the principles set forth in *State v. Silvia*, 898 A.2d 707 (R.I.2006), would have provided an alternative rationale for dealing with defendant's Rule 609 arguments. In *Silvia*, 898 A.2d at 718–19, we said that we would "henceforth" adhere to the holding in *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), in which the United States Supreme Court held that a defendant must have testified at trial in order to be able to preserve a Rule 609 issue for appeal. Since it is not necessary for us to do so in this instance, we shall not at this time explore the precise implications of our use of the term "henceforth" in our decision in *Silvia*.